THE CURTIN.

(Circuit Court of Appeals, Fourth Circuit. September 8, 1914.)

No. 1245.

**1. COLLISION (§ 18*)—LIABILITY—NEGLIGENCE NOT A PROXIMATE CAUSE.**

Acts of negligence which do not contribute to a collision as a proximate cause do not render a ship liable.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 16; Dec. Dig. § 18.*]

**2. COLLISION (§§ 149, 153*)—SUITS FOR DAMAGES—FINDINGS OF FACT—REVIEW.**

Whether negligence imputed is the proximate cause of a collision, or merely collateral or immaterial, is a question of fact; and, where the conclusion of the District Court is not against the preponderance of the evidence, it cannot be disturbed by an appellate court.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 149, 299-301, 305-307, 310, 311; Dec. Dig. §§ 149, 153.*]

**3. COLLISION (§ 105*)—STEAM VESSELS MEETING—CHANGE OF COURSE.**

A finding that a collision on the Elizabeth river in the evening between a gasoline launch and a meeting tug was due solely to the fault of the tug in changing her course shortly prior to the collision *held* supported by the evidence; it appearing that until such change the vessels were on safe courses.

[Ed. Note.—For other cases, see Collision; Dec. Dig. § 105.*]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by William S. Bensten, owner of the gasoline launch Cecilia, against the steam tug Curtin, Charles Gring claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 205 Fed. 989.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ralph H. Riddleberger, of Norfolk, Va. (Riddleberger & Roper, of Norfolk, Va., on the brief), for appellant.

R. M. Hughes, Jr., of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges.

WOODS, Circuit Judge. On December 18, 1911, the gasoline launch Cecilia was going up the Elizabeth river from Hampton Roads to Norfolk. The tug Curtin was coming down the river on the south or Portsmouth side of the river near the middle of the stream on its way to Pinner's Point. The tug Pinner's Point, with a barge alongside was crossing the river from Pinner's Point to Ft. Norfolk. The Cecilia and the Curtin collided astern the Pinner's Point, with the result that the Cecilia was sunk. The District Court held the Curtin entirely at fault, and adjudged that William S. Bensten, owner of the Cecilia, should recover of the Curtin and its owners $1,566.52. There is no substantial difference as to the law. While the testimony in its details is irreconcilable and confusing, we think the controlling fact is established by the preponderance of the evidence. The witnesses differ somewhat as to the precise point of collision, but they agree that it occurred near midstream at about 5:45 in the afternoon.

The master of the Cecilia admits hearing two whistles from the Pinner's Point, and the answer of two whistles from another vessel, which turned out to be the Curtin, indicating the intention of the answering vessel to pass astern of the Pinner's Point. The fact that the master of the Cecilia held his course up and gradually across the stream and astern of the Pinner's Point without giving any signal, and with knowledge from the signal of the Curtin that a down-going vessel was about to pass astern of the Pinner's Point, would be fatal to his claim of exemption from blame, if this course of conduct contributed as a proximate cause to the collision. But we think the preponderating evidence shows that it did not. The master of the Cecilia testified that he did not signal the Pinner's Point because she was so far away that a signal was unnecessary. The master of the Norfolk and the master of the Pinner's Point, both impartial witnesses, corroborate his statement that the Cecilia and the Curtin were showing green to green, and would have passed each other safely but for the sudden change of course of the Curtin toward the Cecilia, after the Pinner's Point had passed.

There was evidence that the Cecilia was out of the course prescribed by the rules, and this, together with the signal of the Curtin, might well be held to impose upon the Cecilia the burden of keeping out of the way of the Curtin. Assuming that she was bound to keep out of the course of the Curtin, the evidence that there was no danger to either vessel until the Curtin changed her course tends to show that she discharged this duty—that she did nothing which put either vessel in danger, and that the cause of the collision was the Curtin's change of course. Singleton, the mate of the Curtin, who was navigating her, is alone in his testimony that the collision was caused by the Cecilia changing her course and trying to cross his bow, and that the master of the Cecilia when taken on his vessel and asked his reason for the change did not deny it.

[1] Acts of negligence which do not contribute to the accident as a proximate cause do not render a ship liable, even under the American as distinguished from the English rule of liability. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The City of Macon, 92 Fed. 207, 34 C. C. A. 302; The Lord O'Neill, 66 Fed. 77, 13 C. C. A. 337; Marsden on Collisions at Sea (6th Ed.), 14.

[2] Whether negligence imputed is the proximate cause or merely collateral or immaterial is a question of fact, and where the conclusion of the District Court is not against the preponderance of the evidence it cannot be disturbed.

[3] It seems clear beyond dispute that the proximate cause of the collision was the negligent change of course by one or the other of the vessels. Enough of the evidence has been set out to show that the preponderance supports the finding of the District Judge that the courses of the two vessels were safe, that it was the Curtin that suddenly changed her course and struck the Cecilia, and that the danger of such a change would have been evident if the Curtin had had an adequate watch.

Affirmed.